**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RONALD ROSS,

                                    Petitioner,

v.

DWIGHT NEVEN,[1] et al.,

                                    Respondents.

Case No. 2:13-cv-01562-JCM-DJA

**ORDER**

Ronald Ross, a Nevada prisoner who was convicted of various offenses stemming from two larceny incidents and is serving four concurrent sentences of ten years to life, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, alleging that the state failed to disclose evidence, and his trial counsel failed to communicate with his trial counsel in a different criminal case. (ECF No. 62.) This court denies Ross' habeas petition, denies him a certificate of appealability, and directs the clerk of the court to enter judgment accordingly.

**I.      BACKGROUND**[2]

Irene MacCreaty, who was 76-years old at the time of Ross' trial, testified that she was visiting Las Vegas, Nevada on January 11, 2006. (ECF No. 17-8 at 19.) On that day, around 2:00

---

[1] The state corrections department's inmate locator page states that Ross is currently incarcerated at High Desert State Prison. The department's website reflects Calvin Johnson is the warden for that facility. At the end of this order, the court directs the clerk to substitute Ross' current physical custodian, Calvin Johnson, as a respondent for the prior respondent Dwight Neven, pursuant to rule 25(d) of the Federal Rules of Civil Procedure.

[2] The court makes no credibility findings or other factual findings regarding the truth or falsity of this summary of the evidence from the state court. This court's summary is merely a backdrop to its consideration of the issues presented in the case. Any absence of mention of a specific piece of evidence does not signify the court overlooked it in considering Ross' claims.

p.m., MacCreaty was shopping for some earrings at a JC Penney store when "[a] fellow came up to [her] and asked [her] if [she] would help him pick out a pair of earrings for his girlfriend." (*Id.* at 19–20.) MacCreaty identified Ross as that individual. (*Id.* at 20.) As MacCreaty was assisting Ross, he was positioned "directly behind [her] to the side where . . . [her] purse was hanging." (*Id.* at 21.) After MacCreaty and Ross picked out a pair of earrings, MacCreaty went to purchase a necklace but found that her wallet was missing from her purse. (*Id.* at 22.)

Paul Dominguez, a loss prevention manager at JC Penney, testified that he viewed the surveillance footage of MacCreaty and Ross. (ECF No. 17-8 at 27–28.) Dominguez described what he saw in that footage: "I observed two African American suspects . . . . There was an elderly lady that was shopping in the store. She was looking at fashion jewelry stuff, and I observed one of the guys remove a wallet out of her purse and place it under his jacket." (*Id.* at 28.) Officer Sheri Carr with the Las Vegas Metropolitan Police Department (hereinafter LVMPD) also viewed the footage and described what she saw: "[t]he victim was in the jewelry section of JC Penney, and there were 2 black males that approached her immediate area. The one black male stood very close to Ms. MacCreaty's left shoulder" while "the other male who was taller and a bit larger in stature stood a few feet away from them as a look out." (*Id.* at 31.) Officer Carr then "saw some activity with a draped jacket and things that were suspicious." (*Id.*)

Five days later, on January 16, 2006, Meriam Renaud, who was 86-years old at the time of Ross' trial, was visiting Las Vegas, Nevada with her daughter, Debra Cole. (ECF No. 17-7 at 41.) On that date, Renaud and Cole visited the Golden Nugget, and while they were in that establishment, Renaud's billfold was taken from her purse. (*Id.* at 41–42.) Renaud described the event as follows: "[s]ome fellow grabbed me and held me and he wouldn't let me . . . move. And another fellow came and pulled my billfold out of my pocket book." (*Id.* at 42.) Renaud did not

remember what either of the men looked like. (*Id.*) However, Cole, who observed them, testified that one individual was "[a] big black man, over 6 foot tall" and "was wearing a long leather coat," and the other individual was "a black man," who "was skinnier than the other man and shorter." (*Id.* at 46.) Cole did not see the smaller individual's face. (*Id.* at 48.)

Officer Bradly Gallup with the LVMPD testified that he viewed the Golden Nugget's surveillance footage following the incident with Renaud. (ECF No. 17-8 at 4–5.) Officer Gallup described what he saw in that footage: "a black individual wearing white . . . appeared to distract the elderly victim . . . . When the victim looked up it appeared that he reached inside her purse and took her wallet. Then he handed that off to another black male wearing dark clothing." (*Id.* at 5.) The larger individual was apprehended outside the Golden Nugget and identified as Jerome Ford. (*Id.* at 6.) "[A] room key card to the Plaza Hotel" was located on Ford's person. (*Id.*) Officer Nathan Boss with the LVMPD then "had Golden Nugget security contact the security over at the Plaza Hotel with a description of the second person in the video surveillance," asking "them to watch out for the guy." (*Id.* at 11.) Officer Boss gave the following description of the second individual based on his observation of the surveillance footage: "he was a black male. He had cornrows in his hair, wearing a black leather jacket, white silk shirt and dark slacks." (*Id.*)

Donald Fuller, a security supervisor at the Plaza Casino, testified that based on the telephone call he received from the Golden Nugget, he had the suspected room locked. (ECF No. 17-8 at 12–13.) A few hours later, Fuller got a telephone call from Plaza Casino's front desk, informing him that an individual was trying to get into the suspected room. (*Id.* at 13.) When Fuller responded to the call, he observed a man with "cornrows in his hair, a white dress shirt, [and] brown leather jacket" at the front desk. (*Id.*) That man identified himself as Ross. (*Id.*)

A jury found Ross guilty of two counts of burglary, two counts of conspiracy to commit larceny from the person, two counts of larceny from a person 60 years of age or older, and two counts of grand larceny. (ECF No. 17-10.) The state district court dismissed the two grand larceny counts before sentencing Ross to ten years to life for each burglary conviction, ten years to life for each larceny from a person 60 years of age or older conviction, and one year for each conspiracy to commit larceny from the person conviction. (ECF No. 17-18.) The Nevada Supreme Court affirmed on December 10, 2010, and remittitur issued on January 4, 2011. (ECF Nos. 18-21, 18-22.)

Ross filed his state habeas petition on December 14, 2011. (ECF No. 20-5.) The state district court denied the petition on March 20, 2012. (ECF No. 20-18.) Ross appealed, and the Nevada Supreme Court affirmed on January 16, 2013. (ECF No. 21-11.) Remittitur issued on February 12, 2013. (ECF No. 21-12.)

Ross filed his pro se federal habeas petition and his counseled first amended petition on August 29, 2013, and December 4, 2015, respectively. (ECF Nos. 1, 38.) The respondents moved to dismiss the petition on December 28, 2015. (ECF No. 42.) This court granted the motion, in part, dismissing grounds 1, 4(c), and 4(d) and finding that grounds 3 and 4(b) were unexhausted. (ECF No. 47.) Following Ross' request, this court stayed this action pending exhaustion of Ross' unexhausted claims. (ECF No. 56.)

Ross filed a second state habeas petition on June 9, 2017. (ECF No. 60-2.) The state district court denied Ross' petition on September 12, 2017. (ECF No. 60-7.) The Nevada Court of Appeals affirmed on July 17, 2018, and remittitur issued on August 15, 2018. (ECF Nos. 60-14, 60-15.)

Ross moved to reopen his federal case on October 1, 2018. (ECF No. 59.) After this court granted the motion, Ross filed a second amended petition. (ECF Nos. 61, 62.) The respondents

again moved to dismiss. (ECF No. 64.) This court granted the motion, in part, indicating that grounds 1, 4(c), and 4(d) remain dismissed and dismissing grounds 3 and 4(b) as procedurally defaulted. (ECF No. 74.) The respondents answered Ross' second amended petition on October 22, 2019, and Ross replied on June 8, 2020. (ECF Nos. 77, 88.)

## II.   STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be

more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.   DISCUSSION

### A.   Ground 2

In ground 2, Ross alleges that the state failed to disclose favorable and material evidence in violation of his right to due process under the Fifth and Fourteenth Amendments. (ECF No. 62 at 18.)

#### 1.   Background information

Ross moved to dismiss his convictions for discovery violations, or, in the alternative, for a new trial based on newly discovered evidence after the Nevada Supreme Court affirmed his convictions on direct appeal. (ECF No. 18-23 at 3.) Ross' appellate counsel submitted a declaration in support of the motion, explaining that he represented Ross in his appeals in two criminal cases, the instant case, case number C220916, and case number C236169. (*Id.* at 6.) Ross' appellate counsel then declared the following:

1
2
3
4
5

   Prior to the start of trial in case # C236169, the District Attorney moved for the <u>dismissal</u> of several counts stemming from a theft at the Santa Fe Station Casino. The reason for the dismissal was that, after viewing the security video in that case, **it was "immediately apparent" the suspect pictured was <u>not</u> Ronald Ross**. The Detectives from the Tourist Safety Unit had made a blatant misidentification under oath. It occurred to me that this same group of officers and Detectives was responsible for identifying Ronald Ross [in] both C236169 *and* in the instant case, C220916A.[3]

6 (*Id.* (internal citation omitted) (emphases in original).) Ross' appellate counsel explained the

7 importance of this information: "[h]ad the trial attorneys known there had been a prior

8 misidentification by the same Metro Unit responsible for charging Ross, they certainly would have

9 used that information during cross-examination to question the State's witnesses on bias,

10 completeness of the police investigation, veracity, and the validity of the eyewitness

11 identifications." (*Id.* at 7.)

12    Ross' trial counsel also submitted a declaration in support of Ross' motion, explaining that

13 he "has no recollection of being made aware . . . that in case C236169, all counts involving the

14 Santa Fe Casino had been voluntarily dismissed because the District Attorney's office had

15 reviewed the video tapes and concluded that the suspect pictured was not Ronald Ross." (ECF No.

16 18-23 at 4.) Ross' trial counsel further declared, "[h]ad this information been available, trial

17 counsel would have used it to impeach the states [sic] expert witnesses who used video evidence

18 to identify Ronald Ross in this case." (*Id.*)

19
20

21 [3] The respondents provided the record from the trial in case number C236169, which shows that,
22 on November 12, 2008, the state reported on the first morning of trial that it had "re-review[ed] the surveillance tape from the Santa Fe." (ECF No. 78-1 at 4.) Based on that review, the state said it was "immediately apparent it is not Mr. Ross from the Santa Fe," so the state would not be
23 "going forward on those counts." (*Id.*)

### 2.      Standard for a *Brady* claim

"[T]he suppression by the prosecutor of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Because a witness's "'reliability . . . may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady*] rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The materiality of the evidence that has been suppressed is assessed to determine whether prejudice exists. *Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Accordingly, "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S. at 678).

### 3.      State court determination

In affirming the state district court's denial of Ross' motion to dismiss or, in the alternative, motion for a new trial, the Nevada Supreme Court held:

> Ross argues that the district court erred by denying his motion for a new trial on the basis that he had newly discovered evidence that charges against him in

another case were dropped because a police officer with Las Vegas's Tourist Safety Unit incorrectly identified him on a surveillance videotape. He claims that the prosecution failed to disclose the prior misidentification to him, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and he was unable to discover the evidence until after trial. He further asserts that the misidentification was material to his case because it could have been used to show bias on the part of the entire Tourist Safety Unit, which was involved in the investigation and prosecution of the instant case. We conclude that the district court did not abuse its discretion in denying his motion for a new trial. *See Mortensen v. State*, 115 Nev. 273, 286–87, 986 P.2d 1105, 1114 (1999).

Ross was present during his previous trial when the prosecutor informed the district court that Ross was incorrectly identified on a surveillance videotape and the State would not pursue charges arising from that incident. Therefore, Ross failed to establish that the evidence was "newly discovered" and could not have been produced in his instant trial with reasonable diligence. *See Sanborn v. State*, 107 Nev. 399, 406, 812 P.2d 1279, 1284–85 (1991) (outlining the factors required to prevail on a motion for new trial based on newly discovered evidence). Moreover, Ross did not establish that the evidence of a prior misidentification was material or that a different result would be probable at a second trial. In the instant case, surveillance videos of two separate thefts were admitted into evidence and shown to the jury, two police officers identified Ross as the individual in the videos, the victim of one of the thefts identified Ross as the person who stole her wallet, and eyewitnesses to the other theft provided descriptions that matched Ross's appearance and clothing when he was arrested several hours after the theft. Thus, evidence of a misidentification in another case by a police officer who did not testify or identify Ross in the instant case would not have been material to the defense or likely to change the outcome at a retrial. Accordingly, we conclude that the district court did not abuse its discretion in denying Ross's motion. *See Mortensen*, 115 Nev. at 286–87, 986 P.2d at 1114.

(ECF No. 21-1 at 2–4.)

### 4.    Conclusion

Ross argues that the suppressed evidence was material because it undermined the reliability of the identification that the officers made in the instant case. (ECF No. 62 at 22.) It is true that two officers with the LVMPD Tourist Safety Unit testified at Ross' trial: Detective Ryan Anderson and Officer William Rader. (ECF No. 17-8 at 14, 32.) Detective Anderson testified that he responded to the Golden Nugget on January 16, 2006, reviewed the surveillance footage, and "was

able to identify one gentlemen by the name of Jerome Ford and another by the name of Ronald Ross." (*Id.* at 15.) Similarly, Officer Rader testified that he responded to the JC Penney on January 11, 2006, reviewed the surveillance footage, and "[s]aw Ronald Ross and Jerome Ford." (*Id.* at 32.)

However, as the Nevada Supreme Court reasonably noted, the identification of Ross as the perpetrator in the two larceny incidents was not based entirely on the testimonies of Detective Anderson and Officer Rader. In fact, MacCreaty identified Ross as the individual who approached her at the JC Penney,[4] Ross was apprehended several hours after the Golden Nugget incident wearing the same clothes that the perpetrator was seen wearing, and the jury was shown the surveillance footage of the two incidents. (*See* ECF Nos. 17-7 at 51; 17-8 at 11, 13, 20, 22.) Accordingly, the Nevada Supreme Court reasonably concluded that the misidentification evidence in a different criminal case was not material, so Ross failed to meet the third *Brady* component: prejudice. *See Strickler*, 527 U.S. at 281–82 ("The record provides strong support for the conclusion that petitioner would have been convicted of capital murder and sentenced to death, even if [an eyewitness] had been severely impeached."). Indeed, even if the misidentification evidence had been disclosed to Ross' trial counsel such that he could have used the evidence to impeach Detective Anderson and Officer Rader, there is no reasonable probability that the result of Ross' trial would have been different due to presence of other evidence identifying Ross as the perpetrator. *See Bagley*, 473 U.S. at 682. As such, the Nevada Supreme Court's rejection of Ross's

---

[4] Ross argues that the Nevada Supreme Court relied on an unreasonable factual conclusion in its statement that "the victim of one of the thefts identified Ross as the person who stole her wallet." (ECF No. 88 at 17.) It is true that MacCreaty only identified Ross as the individual who approached her at the JC Penney, but her testimony implied that Ross was the individual who stole her wallet because she had it immediately prior to her interaction with him, discovered it was missing minutes after her interaction with him, and she did not encounter anyone in the meantime. (*See* ECF No. 17-8 at 26.)

1    claim was neither contrary to nor an unreasonable application of clearly established law as

2    determined by the United States Supreme Court and was not based on an unreasonable

3    determination of the facts.[5] Ross is not entitled to federal habeas relief for ground 2.

4    **B.    Ground 4(a)**

5          In ground 4(a), Ross alleges that his trial counsel failed to communicate with his trial

6    counsel in his other criminal case, case number C236169, in violation of his right to the effective

7    assistance of counsel under the Sixth and Fourteenth Amendments. (ECF No. 62 at 29.) Ross

8    elaborates that had his trial counsel in the instant case spoke to his trial counsel in his other case,

9    he would have learned of the exculpatory information regarding misidentification by the LVMPD

10   Tourist Safety Unit officer, as was further discussed in ground 2. (*Id.* at 33.)

11         Ross raised this ground in his first state habeas petition. (ECF No. 20-5 at 6.) The state

12   district court summarily denied the petition because Ross failed to support it with specific factual

13   allegations. (ECF No. 20-18 at 4.) The Nevada Supreme Court affirmed the denial on the same

14   basis. (ECF No. 21-11.) Because the Nevada state courts did not adjudicate this ground on the

15   merits, this court reviews this claim *de novo*.[6] *See Cone v. Bell*, 556 U.S. 449, 472 (2009); *Porter*

16   *v. McCollum*, 558 U.S. 30, 39 (2009); *Carter v. Davis*, 946 F.3d 489, 502 (9th Cir. 2019).

17   //

18

---

19   [5] Ross argues, in part, that the Nevada Supreme Court's decision is not entitled to deference
     because it used the wrong suppression standard in determining that Ross failed to establish that
20   the evidence was newly discovered and failed to consider whether Ross' trial counsel was aware
     of the evidence in question. (ECF No. 88 at 15.) This court disagrees. Ross' motion before the
21   state district court addressed two issues: suppression of evidence by the state *and* a new trial based
     on newly discovered evidence. (*See* ECF No. 18-23 at 3.) The Nevada Supreme Court's discussion
22   about Ross's familiarity with the "newly discovered evidence" responded to the latter issue, not
     the suppression issue.

23   [6] This court previously determined that this ground was exhausted because "the facts that [Ross]
     alleges in the first amended petition do not fundamentally alter the claim." (ECF No. 47 at 6.)

### 1.   Standard for an effective-assistance-of-counsel claim

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

### 2.   Conclusion

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. This investigatory duty includes investigating the defendant's defense and evidence that demonstrates factual innocence or evidence that raises sufficient doubt about the defendant's innocence. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999); *see also Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994). It is clear that Ross' trial counsel for the instant case did not discuss the misidentification issue with trial counsel for Ross' other criminal case. (*See* ECF No. 18-23 at 4.) However, it is unclear whether Ross' trial counsel was deficient in this regard. First, Ross knew

about the misidentification issue and failed to inform his trial counsel. *See, e.g., Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) ("[C]ounsel is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence."). Second, as was discussed in ground 2, Ross alleges that it was the state's duty to inform his trial counsel of this information under *Brady*.

However, even if Ross' trial counsel was deficient, Ross fails to demonstrate prejudice. *Strickland*, 466 U.S. 668 at 694. To be sure, cross-examining Detective Anderson and Officer Rader about their unit's previous misidentification of Ross in a similar case might have impeached their identifications of Ross in the instant case and may have demonstrated bias and sloppy police work on the part of the LVMPD Tourist Safety Unit. However, as was discussed in ground 2, Detective Anderson and Officer Rader's testimonies were not the only evidence admitted at Ross' trial identifying him as the perpetrator. Moreover, the LVMPD Tourist Safety Unit played only a minor role in apprehending Ross, especially regarding the Golden Nugget incident where the surveillance and security guards from the Golden Nugget and the Plaza Casino worked together to apprehend Ross. Therefore, Ross fails to demonstrate that there is a reasonably probability that impeaching Detective Anderson and Officer Rader with the information his trial counsel allegedly failed to uncover in the course of his investigatory duties would have resulted in a different result at trial. *Strickland*, 466 U.S. at 694; *see also Doe v. Ayers*, 782 F.3d 425, 431 (9th Cir. 2015) (concluding that the defendant's trial counsel "could have done a much better job of impeaching [the witness], . . . but the failures regarding impeachment of [the witness] are of comparatively

1    little consequence"); *Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not

2    established by mere speculation."). Ross is not entitled to relief for ground 4(a).[7]

3    **IV.    CERTIFICATE OF APPEALABILITY**

4            This is a final order adverse to Ross. Rule 11 of the Rules Governing Section 2254 Cases

5    requires this court issue or deny a certificate of appealability (COA). As such, this court has *sua*

6    *sponte* evaluated the remaining claims within the petition for suitability for the issuance of a COA.

7    *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to

8    28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial

9    showing of the denial of a constitutional right." With respect to claims rejected on the merits, a

10   petitioner "must demonstrate that reasonable jurists would find the district court's assessment of

11   the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing

12   *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only

13   if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a

14   constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

15           Applying these standards, this court finds that a certificate of appealability is unwarranted.

16   //

17   //

18   //

19

---

20   [7] Ross requests that this court "[c]onduct an evidentiary hearing at which proof may be offered
     concerning the allegations in [his] amended petition and any defenses that may be raised by
21   respondents." (ECF No. 62 at 44.) Ross fails to explain what evidence would be presented at an
     evidentiary hearing. Furthermore, this court has already determined that Ross is not entitled to
22   relief, and neither further factual development nor any evidence that may be proffered at an
     evidentiary hearing would affect this court's reasons for denying relief. Thus, Ross' request for an
23   evidentiary hearing is denied.

**V.     CONCLUSION**

In accordance with the foregoing, **IT IS THEREFORE ORDERED**:

        1.      The petition (ECF No. 62) is DENIED.

        2.      A certificate of appealability is DENIED.

        3.      The clerk of the court will substitute Calvin Johnson for Respondent Dwight Neven.

        4.      The clerk of the court is directed to enter judgment accordingly.

Dated:  September 30, 2021.

 

                                JAMES C. MAHAN
                                UNITED STATES DISTRICT JUDGE